UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DAIRYLAND INSURANCE COMPANY, a Wisconsin corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SUSAN EMENS, individually, and as the Special Administrator of the Estate of Stephen Emens, and DOES I through X, inclusive<br><br>Defendants. | Case No.: 2:07-cv-1284-RLH-PAL<br><br>**O R D E R**<br><br>(Motion to Dismiss–#5;<br>Cross Motion for Summary Judgment–#7) |

   Before the Court is Defendant Susan Emens' ("Susan") **Motion to Dismiss** (#5), filed March 6, 2008.  The Court has also considered Plaintiff Dairyland Insurance Company's ("Dairyland") Opposition (#6), filed March 20, 2008, and Susan's Reply (#8), filed April 3, 2008.

   Also before the Court is Dairyland's **Cross Motion for Summary Judgment** (#7), filed March 25, 2008.  The Court has also considered Susan's Opposition (#8), filed April 3, 2008, and Dairyland's Reply (#9), filed April 7, 2008.

**BACKGROUND**

   This case arises out of a dispute between Dairyland and Susan over whether Nevada law permits her to the stack the uninsured motorist ("UIM") benefits of her deceased husband

AO 72
(Rev. 8/82)

Stephen Emens' ("Stephen") motorcycle insurance policy (the "Policy"). Susan is Stephen's heir for the purpose of Nevada's wrongful death statute and the Special Administrator of his estate.

Stephen owned two motorcycles, a Honda and a Harley Davidson, insured under a single policy issued by Dairyland, which provided each motorcycle with UIM coverage of $100,000/$300,000. In addition to Stephen and Susan, both named insureds under the Policy, these coverages extended to permissive users. Stephen paid a UIM premium of $251.80 for each motorcycle. The Policy included the following anti-stacking clause:

> LIMIT OF UNDERINSURED MOTORIST INSURANCE
>
> THE LIMIT OF UNDERINSURED MOTORIST INSURANCE SHOWN ON THE DECLARATIONS PAGE FOR "EACH PERSON" IS THE MAXIMUM WE'LL PAY IN DAMAGES FOR BODILY INJURY TO ANY ONE PERSON.
>
> . . . .
>
> IF YOU OR ANY OTHER PERSON INSURED UNDER THIS POLICY IS IN AN ACCIDENT:
>
> 1. ON A MOTORCYCLE THAT IS INSURED BY THIS POLICY - WE WILL NOT PAY MORE THAN THE LIMIT OF COVERAGES FOR THAT PARTICULAR MOTORCYCLE.
>
> . . . .
>
> THIS LIMIT OF COVERAGE APPLIES REGARDLESS OF THE NUMBER OF POLICIES, INSUREDS, INSURED MOTOR VEHICLES, CLAIMS MADE, OR MOTOR VEHICLES INVOLVED IN THE ACCIDENT OR LOSS. COVERAGES ON OTHER MOTOR VEHICLES INSURED BY US CANNOT BE ADDED TO OR STACKED ON THE COVERAGE OF THE PARTICULAR MOTOR VEHICLE INVOLVED.

(Dkt. #5-2, Def.'s Mot. Ex. A at 11.)

Stephen died in an accident with another motorist on April 27, 2006, while riding his Harley Davidson motorcycle. Following the accident, Susan filed a wrongful death claim and recovered the policy limit held by the other motorist. She also collected $100,000 in UIM benefits from Dairyland. Notwithstanding, Susan contends that she is entitled to stack the UIM benefits for each motorcycle. She demands that Dairyland pay another $100,000 and threatens to file a bad faith claim if Dairyland does not pay the requested sum.

On September 21, 2007, Dairyland filed suit in this Court seeking a declaration that the Policy does not permit Susan to stack UIM benefits. Susan now moves to dismiss, contending that Dairyland's anti-stacking clause is void under Nev. Rev. Stat. § 687B.145(1). In support of her Motion, Susan attaches her attorney's affidavit and motorcycle insurance quotes from Dairyland. Finally, Dairyland filed a Cross Motion for Summary Judgment on March 25, 2008, which includes an affidavit by its actuary, Donald Sandman ("Sandman").

## DISCUSSION

**I. Summary Judgement Standard**

Though Susan originally moved to dismiss under Fed. R. Civ. P. 12(b)(6), the Parties and the Court agree that because they submitted "matters outside the pleadings . . . the [M]otion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In addition, Dairyland filed a Cross Motion for Summary Judgment. Because both Parties have so moved, "[e]ach [M]otion must be considered on its own merits." *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quotations omitted).

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidentiary basis for a reasonable fact finder to find for the nonmoving party; a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 249 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Id.*

Once the moving party satisfies the requirements of Rule 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for

trial." *Anderson*, 477 U.S. at 256 (quotations omitted).  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosp. Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 465 U.S. at 586.

For the following reasons, the Court denies Susan's Motion to Dismiss and grants Dairyland's Cross Motion for Summary Judgment.

**II. Analysis**

Generally, an insured has a reasonable expectation that she will receive additional UIM benefits for each separate UIM premium paid.  *Torres v. Farmers Ins. Exch.*, 793 P.2d 839, 842 (Nev. 1990).  However, § 687B.145(1) of the Nevada Revised Statutes permits insurers to limit stacking of UIM coverages and provides that any such limiting provision:

> [M]ust be in clear language and be prominently displayed in the policy . . . . Any limiting provision is void if the named insured has purchased separate coverage on the same risk and has paid a premium calculated for full reimbursement under that coverage.

The Nevada Supreme Court interprets § 687B.145(1) to impose three requirements upon insurers with respect to anti-stacking clauses: (1) clarity; (2) prominence; and (3) the insured cannot "have purchased separate coverage on the same risk nor paid a premium calculated for full reimbursement under that coverage."  *Bove v. Prudential Ins. Co. of Am.*, 799 P.2d 1108, 1110 (Nev. 1990).  Thus, Dairyland can defeat Susan's reasonable expectation by proving that its anti-stacking clause conforms to § 687B.145(1).  *Torres*, 793 P.2d at 842–843.  The Parties concede that Dairyland's anti-stacking clause satisfies the clarity and prominence requirements.  Accordingly, the Court focuses solely on the third prong prohibiting double premiums.

The burden of proving that Stephen did not pay a double premium lies with Dairyland, who has ready access to the documents necessary to make such a determination and the expertise required to explain and justify any added premiums.  *Bove*, 799 P.2d at 1111–12.  To

1  meet its burden, Dairyland must produce evidence, such as expert testimony and actuarial data,

2  demonstrating that Stephen did not purchase separate coverage on the same risk. *See Nationwide*

3  *Mut. Ins. Co. v. Coatney*, 42 P.3d 265, 266, 268 (Nev. 2002) (insurer satisfied its burden by

4  submitting the testimony of its actuary, actuarial tables, and a summary of the model used for

5  calculating UIM premiums); *but see Serrett v. Kimber*, 874 P.2d 747, 751 (Nev. 1994) (insurer

6  failed to meet its burden when it produced only its employee's unsupported affidavit).

7  Susan argues that Stephen purchased double coverage on the same risk because

8  "there is no way possible for one person to be injured on two separate motorcycles at the same

9  time." (Dkt. #8, Def.'s Reply 4.) The record shows otherwise. Specifically, while the Policy

10 covered only two motorcycles, it also covered multiple drivers. In addition to Stephen and Susan,

11 both named insureds, the policy covered permissive users. Thus, the motorcycles could be

12 operated simultaneously and could be involved in accidents at the same time. Accordingly, the

13 Court finds that each motorcycle posed a distinct risk.

14 Susan further contends that Stephen paid a double premium because the Policy

15 listed separate $251.80 premiums for each vehicle. According to Susan, the cost of non-stackable

16 coverage on both motorcycles combined should have been $251.80. The record refutes this

17 assertion. According to Dairyland's actuary, the premium for $100,000/$300,000 UIM coverage

18 on a single motorcycle was $251.80. The UIM premium was the same for both motorcycles,

19 despite their different makes, because they were calculated on the likelihood of each motorcycle

20 being in an accident with an underinsured motorist. While the likelihood of such an accident was

21 the same for both motorcycles, each motorcycle was separately at risk. Therefore, Stephen paid

22 separate $251.80 premiums for coverage on each motorcycle's UIM risk. *See Coatney*, 42 P.3d at

23 268 (declining to stack UIM coverages because insureds paid "separate premiums for separate

24 risks on each of [their] vehicles.").

25 Finally, the record shows that Dairyland does not offer stacked motorcycle UIM

26 coverage in Nevada. According to Sandman, even if Dairyland offered such coverage, it would

cost more than the premium for non-stacked coverage. Sandman's conclusion is substantiated by the actuarial table Dairyland uses to calculate automobile UIM premiums. The table demonstrates that the base non-stackable UIM premium costs less than the optional stackable UIM premium. Thus, had stackable UIM premiums on motorcycles been available, and had Stephen opted to purchase such coverage, he would have paid more than $251.80 per motorcycle.

Because Dairyland satisfies its burden of proof, it remains to Susan to refute this conclusion. *See id*. (ruling that insureds did not pay a double premium in part because they did not present evidence to refute insurer's evidence). Susan fails to present evidence that Stephen paid a double premium or that he should have paid less than $251.80 per motorcycle. Moreover, the little evidence that Susan does present, namely her attorney's affidavit and Dairyland insurance quotes for vehicles not owned by Stephen, is not germane to this case. Accordingly, the Court holds that Dairyland's anti-stacking clause is valid under § 687B.145(1), denies Susan's Motion to Dismiss, and grants Dairyland's Cross Motion for Summary Judgment.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Susan's Motion to Dismiss (#5) is DENIED.

IT IS FURTHER ORDERED that Dairyland's Cross Motion for Summary Judgment (#7) is GRANTED.

The Clerk of Court is directed to enter judgment in favor of Dairyland.

Dated: July 7, 2008.

_____
ROGER L. HUNT
Chief United States District Judge